IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DONALD EUGENE FRAZIER, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-15-550-D |
| | ) |
| VINTAGE STOCK, INC., | ) |
| | ) |
| Defendant. | ) |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On October 26 and 27, 2016, the Court conducted a bench trial of the issues presented for decision in the Final Pretrial Report [Doc. No. 82]. Plaintiff Donald Eugene Frazier, Jr. appeared *pro se*; Defendant Vintage Stock, Inc. appeared through attorneys Dillon Curran and Chris Warzecha, and corporate representative Paula Lawless. Upon consideration of the evidence, the case record, and the parties' arguments, the Court finds and rules as follows.

**Findings of Fact**

1. This action under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, concerns Defendant's decision not to hire Plaintiff for an employment position due to negative information obtained through a criminal background check.

2. Defendant operates retail stores that sell, buy, and trade movies, music, video games, comic books, trading cards and other collectibles. The stores often engage in cash transactions.

3. Plaintiff has previous work experience in retail sales in stores similar to Defendant's. He also has received education and training as a legal assistant; he lacks one

course needed to obtain a paralegal certificate. In one retail job, Plaintiff was supervised by Jay Hanlan, a store manager who now works in that capacity for Defendant at a store located in Oklahoma City. Plaintiff approached Mr. Hanlan at work in 2014 about possible employment. Mr. Hanlan informed Plaintiff there were no job openings in his store but there might be an available sales position at Defendant's store in Moore, Oklahoma, which was managed by Ronnie Von Hemel.

4. Plaintiff submitted a completed application for employment at the Moore store dated August 21, 2014. On the first page of the form, Plaintiff answered "no" to questions asking whether he had been convicted of a felony in the past ten years or a misdemeanor in the past five years. These answers were truthful. However, Plaintiff did have a felony conviction and misdemeanor convictions outside these time periods. In 2001, Plaintiff pleaded guilty to unauthorized use of a motor vehicle, breaking and entering, and unauthorized use of a computer.

5. The second page of the application form contained six paragraphs of information in smaller but legible text immediately above the signature line for the applicant. The first paragraph stated as follows:

> I understand that Vintage Stock performs background checks on all potential employees and it requires my full name . . . and date of birth. I also understand that employment is contingent on results. By signing this application, I give my consent for a background check to be performed.

The third paragraph stated as follows:

> I give Vintage Stock the right to investigate all references and to secure additional information about me, if job related. I hereby release from liability Vintage Stock, Inc. and its representatives for seeking such information and

all other persons, corporations, or organizations for furnishing such information.

6. Mr. Von Hemel reviewed Plaintiff's application, received a recommendation from Mr. Hanlan, and interviewed Plaintiff in September 2014 for the job opening in his store. The available position was a part-time job as a sales clerk or customer service representative in which the employee would work a maximum of 28 hours per week and be paid a minimum wage of $7.25 per hour, without any additional employee benefits. All new employees were subject to a 90-day probationary period during which they would receive no raise or promotion.

7. After a positive interview, Mr. Von Hemel decided to request a criminal background check regarding Plaintiff as part of Defendant's standard hiring procedure. Due to the nature of Defendant's business in which theft is frequently an issue, Defendant conducted a background check on all applicants for employment. Defendant had a firm policy that any applicant with a felony conviction or a misdemeanor conviction for a crime involving dishonesty, was not eligible for employment with Defendant.

8. At some point during the application process, Plaintiff signed a separate document authorizing Defendant to conduct a criminal background check in connection with his application for employment. Defendant could not locate a copy of this document during discovery, and it was not produced. Although both sides acknowledged the document's existence, no evidence concerning its specific contents was introduced.

9. In keeping with Defendant's customary practice, Mr. Von Hemel sent an email to Defendant's human resources ("HR") manager, Paula Lawless, on September 18, 2014,

providing Plaintiff's full name and birth date and asking her to conduct a background check. This was a regular duty of Ms. Lawless's job, and she had established an account for Defendant with an internet-based reporting service, Inteligator, for this purpose.

10. Ms. Lawless conducted a criminal background check the same day that Mr. Von Hemel requested it by performing an online search using Inteligator's website. She did so by logging into Defendant's account with Inteligator, inputting the necessary information regarding Plaintiff, and reviewing the online results of her computer search. Ms. Lawless did not print a full report but printed only a screenshot containing a list of cases associated with Plaintiff's identifying information. She investigated some of the cases by clicking on a link and reviewing additional information regarding a specific case. On the print of the screenshot, she noted the type of criminal case, either felony or misdemeanor. During discovery in this case, Ms. Lawless printed and produced copies of the information she looked at during her online investigation of individual cases. *See* Pl.'s Exs. 26-32.

11. After satisfying herself that Plaintiff was not eligible for employment with Defendant due to a felony conviction and misdemeanor convictions for crimes of dishonesty, Ms. Lawless responded to Mr. Von Hemel's email by simply stating, "no." She did not share the report with anyone, and did not provide any information to Mr. Von Hemel to explain her negative response.

12. On September 18, 2014, Mr. Von Hemel sent an email to Plaintiff regarding employment with Defendant, stating: "I regret to inform you that the Background Check from HR came back negative and I will be unable to hire you due to this." *See* Pl.'s Ex. 1.

4

13.     After receiving this information, Plaintiff contacted Mr. Von Hemel to discuss the negative background check. Mr. Von Hemel referred Plaintiff's questions to Defendant's HR department by providing contact information for Ms. Lawless.

14.     Plaintiff attempted unsuccessfully to reach Ms. Lawless by telephone. He then sent an email to her on September 22, 2014, requesting a copy of the background check that had been obtained for him and "information for [a] direct contact to clear the matter." *See* Pl.'s Ex. 3; Pl.'s Ex. 20, p.6 (unnumbered, bearing handwritten note: "Email #05"). Ms. Lawless responded the same day, stating:

> We use http://inteligator.com if you would like to contact them. Vintage Stock does not provide background checks to the applicants. Thank you for your interest in our company.

Pl.'s Ex. 4; Pl.'s Ex. 20, p.6 (handwritten note: "Email #06").

15.     Plaintiff sent Ms. Lawless a second email on September 22, 2014, stating he had requested a copy of the background check from Inteligator but asking her in the meantime to "please state the disqualifying reason(s) for a negative response. This matter is of importance to me for accuracy due to an anticipated hire for the company." He also stated that "there are options of resolution in regards to disputed background reports under state and federal guidelines for employment purposes." Pl.'s Ex. 5; Pl.'s Ex. 20, pp.7-8 (handwritten note: "#07").

16.     On September 23, 2014, the following exchange of email messages occurred between Plaintiff and Ms. Lawless. First, Ms. Lawless stated:

> Due to the nature of your felony/misdemeanor convictions and the type of business we are, we have made a decision not to employ you. We appreciate your interest in our company and wish you the best in your job search.

Pl.'s Ex. 6; Pl.'s Ex. 20, p.7 (handwritten note: "#08"). Plaintiff responded as follows:

> The information presented appears vague and does not specify what violations were considered and the date of the alleged incidents. I would like "equal consideration" as an applicant in the fairness of receiving unbiased explanation for a disputed background check. The uniform application specifically ask[ed] if a felony has occurred in the past 10yrs or a misdeameanor in the past 5yrs, none of which I received. I have requested a copy of the background check according to regulation and have not received the said report. This prevents me from an opportunity to respond and refute incorrect information.

Pl.'s Ex. 7; Pl.'s Ex. 20, p.7 (handwritten note: "#09"). Ms. Lawless replied on September 24, 2014:

> First, I would like to point out there was nothing wrong with your application. Second, we followed the company policy and normal process of all applicants. I would encourage you to follow up with Inteligator on your copy request. Our decision is final and this matter is closed. Again, I would like to thank you and wish you well.

Pl.'s Ex. 8.

17. Plaintiff did not pursue the matter further with Defendant after September 24, 2014, but he did pursue administrative remedies, which included filing an EEOC charge. Ms. Lawless submitted a written response regarding Plaintiff's EEOC charge with attached documentation (including the email messages quoted above) to explain Defendant's decision not to hire Plaintiff. Ms. Lawless included a document she had obtained from the internet regarding Oklahoma law on employers' use of criminal records. The document bears a date showing it was printed on September 23, 2014, and bears her handwritten notes. It contains information about federal laws, including the FCRA, and plainly states an employer's

6

obligations to give an applicant notice of an intent to disqualify him based on the contents of a criminal background report, and to provide a copy of the report. *See* Pl.'s Ex. 20, p.10.

18. Ms. Lawless testified that she was responsible for Defendant's decision to institute a criminal background check policy for all applicants. She did so after assuming the position of HR manager in 2012 and attending a training session at which background checks were discussed. After Defendant's management approved the policy, Ms. Lawless changed the employment application to include the provision authorizing background checks. She selected Inteligator as the service provider after doing internet research regarding websites that can be used to do criminal background checks. Defendant has continuously used criminal background checks to screen applicants for employment since 2012, and always uses Inteligator, which charges a monthly fee. Ms. Lawless performs criminal background checks on a weekly basis, and Defendant has denied employment to other applicants based on a negative Inteligator report.[1]

19. In her current position, Ms. Lawless is responsible for all Defendant's HR matters and serves as the HR department. She reports directly to the owners of the company. Although Ms. Lawless had prior experience as a supervisor and manager of other employees before taking the position, she had no HR education or training. She received some training

---

[1] At trial, Ms. Lawless also testified regarding changes she made to Defendant's employment application after this lawsuit was filed. Defendant objected to certain testimony as inadmissible under Fed. R. Evid. 407 as evidence of subsequent remedial measures, and the Court received the evidence subject to a later ruling. Upon consideration, the objection is overruled. Ms. Lawless' testimony was not considered by the Court to show any culpable conduct by Defendant. But it did bolster her testimony that Defendant's hiring policy never included any time limits on the consideration of an applicant's prior criminal convictions.

7

regarding HR issues when she took the job, but additional training has been limited to what she has time to accomplish, primarily through online courses.

20. Ms. Lawless testified that she was unaware of FCRA's requirements regarding an employer's use of consumer reports until this lawsuit was filed, and still does not fully understand what it requires. The Court finds this testimony was contradicted, at least in part, by other evidence. The evidence shows that information regarding FCRA's requirements was available to Ms. Lawless and actually read by her (as shown by her checkmarks on a list of FCRA requirements) before she informed Plaintiff that Defendant's hiring decision was final. The information was provided in terms understandable by a lay person, and conspicuously set forth with bullet points stating "obligations of employers who request criminal background checks." *See* Pl.'s Ex. 20, p.10.

21. Plaintiff presented no evidence to effectively suggest he suffered emotional distress as a result of Defendant's decision not to hire him, other than the sort of disappointment normally associated with such an event. But he did testify that the manner in which Defendant handled the decision left him in "limbo" and that the application with Defendant was then his best job prospect. He also expended time and effort doing legal research, learning about his rights, and pursuing available remedies.

22. In November 2014, approximately six weeks after Defendant did not hire him, Plaintiff obtained a job with a company called True Blue. Although Plaintiff's rate of pay varied, his hourly wage ranged from $7.25 to $10.00, and he worked from 26 to 30 hours per week.

## Conclusions of Law

Plaintiff asserts four claims under the FCRA, which are within the jurisdiction of this Court pursuant to 28 U.S.C. § 1331. To prevail on a FCRA claim, Plaintiff must prove:

(1) Defendant failed to comply with a requirement imposed by the Act; and

(2) either Defendant's conduct in failing to comply was negligent and resulted in actual damages sustained by Plaintiff, or Defendant's conduct in failing to comply was willful.

*See* 15 U.S.C. §§ 1681n(a), 1681o. If Plaintiff proves a willful violation of the Act, he may recover: (1) either actual damages sustained as a result of the failure, or statutory damages between $100 and $1,000; and (2) punitive damages. *See id*. § 1681n(a)(1)(A) and (a)(2).

In Claim I, Plaintiff asserts that Defendant violated § 1681b(b)(3)(A)(i) by failing to provide Plaintiff with a copy of the criminal background report that it procured about him before taking an adverse action on his employment application. In Claim II, Plaintiff asserts that Defendant violated § 1681b(b)(3)(A)(ii) by failing to provide Plaintiff with written notice of his FCRA rights before it used the background report to take an adverse action on his employment application. Section 1681b(b)(3)(A) provides:

[I]n using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates–

(i) a copy of the report; and

(ii) a description in writing of the rights of the consumer under this subchapter.

Upon consideration of the facts established by the evidence, the Court finds that Plaintiff has proven that Defendant failed to comply with the requirements of

§ 1681b(b)(3)(A)(i) and (ii), as alleged. Defendant took an adverse action on Plaintiff's employment application, at the latest, on September 24, 2014, when Ms. Lawless informed Plaintiff that Defendant's decision not to employ him was final. At no time before that date did Defendant provide Plaintiff with a copy of the background report that Ms. Lawless obtained through Inteligator, nor did Defendant provide written notice to Plaintiff of his rights to dispute the information in the report.

In Claim III, Plaintiff alleges that Defendant violated § 1681b(b)(1)(A) by failing to certify compliance with FCRA, and so obtained a background report that the consumer reporting agency would not have provided if it had known Defendant was using the report for employment purposes. Section 1681b(b)(1) provides:

> A consumer reporting agency may furnish a consumer report for employment purposes only if–
>
> (A) the person who obtains such report from the agency certifies to the agency that–
>
> > (i) the person has complied with paragraph (2) [requiring a written disclosure to the consumer and the consumer's written authorization] with respect to the consumer report, and the person will comply with paragraph (3) [imposing conditions on the use for adverse employment actions] with respect to the consumer report if paragraph (3) becomes applicable; and
> >
> > (ii) information from the consumer report will not be used in violation of any applicable Federal or State equal employment opportunity law or regulation; and
>
> (B) the consumer reporting agency provides with the report, or has previously provided, a summary of the consumer's rights under this subchapter.

Upon consideration of the facts established by the evidence, the Court finds that Plaintiff has not proven that Defendant failed to comply with the requirements of § 1681b(b)(1), as alleged. This provision imposes conditions under which a consumer reporting agency may furnish a consumer report for employment purposes. If the provision is violated, the consumer reporting agency may be held liable for resulting damages, but it provides no basis for liability of the user of a consumer report. *See Obabueki v. Int'l Bus. Mach. Corp.*, 145 F. Supp. 2d 371, 393-94 (S.D.N.Y. 2001), *aff'd*, 319 F.3d 87 (2d Cir. 2003). Plaintiff does not contend, and has not shown, that Defendant obtained the consumer report about him under false pretenses or knowingly obtained it without a permissible purpose, in violation of § 1681n(b).[2]

In Claim IV, Plaintiff asserts that Defendant violated § 1681b(b)(2)(A) by obtaining Plaintiff's consent to the background report using an authorization form that did not comply with the FCRA's disclosure requirements in that it also contained a liability waiver. Section 1681b(b)(2) provides:

> [A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless–
>
> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

---

[2] Further, the FCRA provides for liability of a "natural person" who obtains a consumer report under false pretenses or without a permissible purpose. *See* 15 U.S.C. § 1681n(a)(1)(B). It does not authorize liability of a corporate entity such as Defendant. *See Burghy v. Dayton Racquet Club, Inc.*, 695 F. Supp. 2d 689, 706 (S.D. Ohio 2010).

(ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

Upon consideration of the facts established by the evidence, the Court finds that Plaintiff has not proven that Defendant violated § 1681b(b)(2), as alleged.

The focus of Plaintiff's argument with respect to this claim is the fact that Defendant's written disclosure and his written authorization to obtain a consumer report for employment purposes were contained within the employment application and were combined with other provisions, including a liability waiver. Some courts have found this practice to be impermissible under the FCRA because it does not satisfy the requirement that the disclosure be made in a document that consists solely of the disclosure. *See Milbourne v. JRK Residential Am., LLC*, 92 F. Supp. 3d 425, 432-33 (E.D. Va. 2015); *see also Avila v. NOW Health Group, Inc.*, No. 14 C 1551, 2014 WL 3537825, *2 (N.D. Ill. May 27, 2015) (unpublished, citing cases).[3] However, Plaintiff testified unequivocally that he signed a written authorization form that was a separate document, apart from the employment application. Although a copy of this document was not produced in discovery or introduced at trial, Plaintiff has not produced any evidence to suggest that this second disclosure and authorization form was insufficient to satisfy § 1681b(b)(2). Thus, Plaintiff has not met his burden to prove that Defendant failed to comply with the requirements of this subsection.

---

[3] *But see Burghy v. Dayton Racquet Club, Inc.*, 695 F. Supp. 2d 689, 696, 698-700 (S.D. Ohio 2010) (FCRA disclosure included in an employment application may be clear and conspicuous, depending on its appearance and placement in the context of the document; the satisfaction of this requirement is a question of law to be decided by the court).

Having found that Defendant violated § 1681b(b)(3)(A), the Court must determine whether Defendant's conduct was negligent or "willful" within the meaning of § 1681n(a). According to the Supreme Court, an FCRA violation is "willful" if it is either intentional or committed in reckless disregard of the defendant's duties under the Act. *See Safeco Ins. Co. v. Burr*, 551 U.S. 47, 57-58 (2007). Recklessness is measured by an objective standard; a defendant's conduct is reckless if it "entail[s] an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id*. at 68. A defendant does not act in reckless disregard of the FCRA "unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69; *see Llewellyn v. Allstate Home Loans, Inc*., 711 F.3d 1173, 1183-84 (10th Cir. 2013); *Birmingham v. Experian Info. Sols., Inc*., 633 F.3d 1006, 1009 (10th Cir. 2011). In determining whether a defendant's reading of the FCRA was reckless, district courts are called to examine the text of the statute, case law that existed at the time of the alleged violation, and any agency interpretations. *Safeco*, 551 U.S. at 69-70.

"To take advantage of the 'objectively reasonable interpretation' safe harbor, *Safeco* requires that the defendant have 'adopt[ed]' and acted on an interpretation of the statute." *Milbourne v. JRK Residential Am., LLC*, No. 3:12cv861, 2016 WL 4265741, *6 (E.D. Va. Aug. 11, 2016) (to be published) (quoting *Safeco*, 551 U.S. at 70 n.20) (alteration in *Milbourne*). Absent evidence that Defendant acted in reliance on an interpretation of the relevant provision of the FCRA or that Defendant's conduct might be acceptable under the

statute, the "objectively reasonable" analysis of *Safeco* does not apply, and a finding of a willful violation is justified. *See id*. A defendant "does not lose the potential protection of the 'reasonable interpretation' defense, even if it never actually interpreted FCRA prior to the commencement of the lawsuit." *Fuges v. Southwest Fin. Servs., Ltd.*, 707 F.3d 241, 251 (3d Cir. 2012). But *Safeco* requires that the defendant advance an objectively reasonable interpretation of the FCRA. *Id*. A finding of subjective bad faith is not required. *See Milbourne*, 2016 WL 4265741 at *7.

Upon consideration of the evidence and the factual circumstances set forth above, the Court finds that Defendant's violations of § 1681b(b)(3)(A) were "willful" in that Defendant acted with reckless disregard of its duties under the FCRA. Defendant makes no effort to justify its conduct based on a reasonable interpretation of the statute but, instead, defends its noncompliance solely with Ms. Lawless's testimony regarding her ignorance of the FCRA and her lack of intent to violate the Act. However, even accepting her testimony (which the Court found to have been contradicted), there can be no question that Ms. Lawless recklessly disregarded Defendant's obligations to provide Plaintiff with a copy of the background report that she used, and to provide advance notice of Plaintiff's rights under the Act before making a final decision. Clearly, compliance with the Act would not have altered Defendant's non-hiring decision regarding Plaintiff, given its hiring policy and his convictions for crimes involving dishonesty. However, Defendant acted in reckless disregard of the FCRA by adopting and continuing to use a non-compliant hiring practice.

Turning then to the issue of damages, the Court finds that Plaintiff has not proven any actual damages directly caused by Defendant's violations of the Act.[4] The Court further finds, however, that Plaintiff should receive an award of statutory damages in the amount of $2,000.00. This amount represents the maximum amount of statutory damages for each violation of the Act by Defendant. The Court finds this amount is appropriate due to Defendant's cavalier use of consumer reports for employment purposes.

It is undisputed that Defendant adopted a new hiring practice of obtaining criminal background reports in 2012 without any research or legal advice regarding applicable laws or limits on the use of such reports for employment purposes. Defendant, acting through Ms. Lawless, signed up for an online service to obtain criminal background checks for use in screening job applicants, again without investigating legal limits. Ms. Lawless was aware generally that legal requirements existed because she changed Defendant's employment application to include an authorization for background checks. Defendant repeatedly used Inteligator to access consumer reports on job applicants for at least two years, without any regard for applicants' rights or the potential consequences of its conduct, until Plaintiff's complaint alerted Ms. Lawless to the problem. The evidence shows that when she looked, Ms. Lawless located readily available information regarding the FCRA's requirements and consumers' rights in the employment context. The Court finds that a significant award of

---

[4] Some reference was made during trial to Plaintiff's search for alternative employment. Indeed, Plaintiff obtained substantially equivalent employment within six weeks of Defendant's denial of employment, and presented no persuasive evidence that Defendant's conduct delayed or interfered with his employment search in any significant way.

15

damages is warranted to impress on Defendant the legal protections afforded by the FCRA to job applicants and employees, and to deter future violations. *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 718 (9th Cir. 2010) (FCRA statutory damages serve deterrent purpose); *Yohay v. City of Alexandria Emp. Credit Union, Inc.*, 827 F.2d 967, 972 (4th Cir. 1987) (award of punitive damages without actual damages serves FCRA's deterrent purpose).

Although the Court finds that Defendant's reckless conduct warrants the maximum amount of statutory damages under the circumstances, the Court finds that an additional award of punitive damages is not warranted. The FCRA authorizes "such amount of punitive damages as the court may allow." *See* 15 U.S.C. § 1681o(a)(2). Under federal law, punitive damages serve purposes of "deterrence and punishment over and above that provided by compensatory awards." *See Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1308-09 (10th Cir. 2003) (internal quotations omitted). Given the Court's substantial award of damages to Plaintiff, an additional award of punitive damages is not needed to deter future FCRA violations by Defendant or other employers. Further, there is no contention or proof that Defendant's violations of the FCRA were the result of something more than recklessness, or that Defendant acted in bad faith or with malice toward Plaintiff. Therefore, the Court finds an award of damages to punish Defendant for wrongful conduct is not necessary or appropriate.

**Conclusion**

In summary, upon consideration of all facts and circumstances shown by the record, the Court finds that Plaintiff has proven by the preponderance of the evidence that Defendant willfully violated the FCRA and that an award of damages in the amount of $2,000.00 should be made.

IT IS THEREFORE ORDERED that Plaintiff is entitled to a judgment against Defendant for a statutory award of damages in the amount of $2,000.00. A separate judgment shall be entered accordingly.

IT IS SO ORDERED this 28th day of November, 2016.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE